■ In the Matter of TOWN BOARD OF THE TOWN OF HUNTINGTON, Respondent, v ZONING BOARD OF APPEALS OF THE TOWN OF HUNTINGTON, Appellant, and 100 MARCUS DRIVE ASSOCIATES, Intervenor-Appellant.—In a proceeding pursuant to CPLR article 78 to review a determination of the Zoning Board of Appeals of the Town of Huntington dated August 6, 1987, which, after a rehearing, reaffirmed a prior determination dated September 4, 1986, granting a use variance to the intervenor, 100 Marcus Drive Associates, the Zoning Board of Appeals of the Town of Huntington and 100 Marcus Drive Associates separately appeal from a judgment of the Supreme Court, Suffolk County (Baisley, J.), entered July 22, 1988, which granted the petition and annulled the determination.

Ordered that the judgment is affirmed, without costs or disbursements.

The intervenor in this action, 100 Marcus Drive Associates (hereinafter Marcus) applied for a use variance, which was granted by the Zoning Board of Appeals of the Town of Huntington (hereinafter Board). The grant of the use variance is challenged in this proceeding by the Town Board of the Town of Huntington. Marcus owns a 6.9-acre parcel of real

property in the industrially zoned area of Melville in the Town of Huntington. This property was developed as an industrial building containing 84,000 square feet of office space and approximately 75,600 square feet of warehouse space. At present, off-street parking is provided for 191 vehicles. This building has never been fully rented. The principal of Marcus testified that it had only two tenants and that approximately 47% of the building remains vacant. Marcus wished to convert a greater portion of the building to office use, which is more competitive in the region and offers a greater return. However, the parking available was insufficient.

In 1985 Marcus purchased a 1.3-acre strip of property which is located in the adjacent residentially zoned area. Marcus sought to utilize this strip, and another adjoining plot which belongs to, and is used by, Long Island Lighting Company (hereinafter LILCO) for its electrical towers and heavy transmission lines, to provide off-street parking to facilitate the use of its existing industrial building. It is undisputed that the property is nearly surrounded by commercial buildings but also abuts a 25-acre parcel of farmland.

In support of the application for a use variance, a local farmer testified that the LILCO plot, although farmed by him at the moment to avoid its use as a dump, was useless for farming and would make a much better parking lot. He also testified that the overhead LILCO transmission lines emitted piercing noises and interfered with television reception. The real estate expert who testified on behalf of Marcus at the hearing before the Board explored all the permitted residential uses and stated that the plot purchased by Marcus was too small for many of the permitted residential uses, and there was no demand for any of the other permitted uses in the area. The expert testified that only two residences had been built in the area since the adoption of the master plan in 1966. However, he admitted that the subject property had not been offered for sale. The property as presently residentially zoned was worth approximately $18,000-$20,000 per acre but would yield $400,000 per acre if permitted to be used for commercial purposes. It appears from the record that Marcus had paid between $80,000 and $90,000 for the lot, which is approximately four times greater than the value its expert testified it was worth.

Where a use variance is sought, the applicant must show practical difficulties and unnecessary hardship (*Matter of Consolidated Edison Co. v Hoffman,* 43 NY2d 598, 607). " 'Before

the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show (1) that the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality' " *(Matter of Village Bd. v Jarrold,* 53 NY2d 254, 257, quoting from *Matter of Otto v Steinhilber,* 282 NY 71, 76, *rearg denied* 282 NY 681; *Matter of Governale v Board of Appeals,* 121 AD2d 539).

Here, Marcus relied on the predominantly industrial use of property in the area in support of its claim that the property was unsuitable for the residential use for which it was zoned. However, the real estate expert's testimony on the reluctance to build residences in this area because the master plan indicated that area would eventually "go industrial", did not satisfy the requirement that the landowner must demonstrate factually, "in dollars and cents form" an inability to realize a reasonable return under existing permissible uses *(Matter of Village Bd. v Jarrold, supra,* at 257; *Matter of Clark v Board of Zoning Appeals,* 301 NY 86, 90, *cert denied* 340 US 933; *Matter of Governale v Board of Appeals, supra).* Similarly, the testimony by the principal of Marcus that without the additional parking, the existing commercial building was not yielding the highest return does not amount to a showing of hardship. A use variance may not be granted merely because the zoning ordinance proscribes the most profitable use of the land, or because the variant use will yield a higher return *(see, Matter of Croissant v Zoning Bd. of Appeals,* 83 AD2d 673; 2 Anderson, New York Zoning Law and Practice § 23.16 [3d ed]). As the hardship alleged is generally applicable in that area, Marcus has failed to demonstrate that the alleged hardship was unique *(see, Matter of Douglaston Civic Assn. v Klein,* 51 NY2d 963). Moreover, as Marcus *knew* when it purchased the property that the proposed use was prohibited, and knowingly took a gamble in paying a higher price, it cannot now claim a hardship solely because that use is prohibited *(see, Matter of Clark v Board of Zoning Appeals, supra).*

There is no merit to the claim by Marcus that the decision by the Board to conduct a rehearing was improper and illegal *(see,* Town Law § 267). Similarly, the procedural claims of lack of jurisdiction were properly rejected by the court, which stated that the "important public policy questions raised [by

the dispute] should not be dismissed on a procedural technicality" *(see generally, Matter of Castaways Motel v Schuyler,* 24 NY2d 120; *Matter of Hans v Burns,* 48 AD2d 947). Kunzeman, J. P., Eiber, Sullivan and Balletta, JJ., concur.